**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DARREN BROWNE, aka AARON BROWN, | ) ) ) | No. C 03-0047 PJH (PR) |
| Plaintiff, | ) ) ) | ORDER OF PARTIAL DISMISSAL AND SERVICE |
| vs. | ) ) | |
| SAN FRANCISCO SHERIFFS DEPT., et al., | ) ) ) | |
| Defendants. | ) ) | |

This is a civil rights case filed pro se by a state prisoner.[1] The original complaint was dismissed with leave to amend as not meeting the requirement of Rule 8 of the Federal Rules of Civil Procedure that complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief... ." Fed. R.Civ.P. 8(a). Plaintiff amended, but although the complaint was much improved, it contained apparently unrelated claims against different defendants. As the defendants appeared to be improperly joined, *see* Fed. R.Civ.P. 20(a), the court issued an order for plaintiff to show cause why the unrelated defendants should not be dismissed from the case. In his response to the order to show cause, plaintiff says that his claims are properly joined because all the parties named "fall[] under the broad entities [sic] of the San Francisco Sheriff's Dept.," "serve" prisoners in the county jail, and are "under the authority" of the sheriff's department.

---

[1] When plaintiff filed his original complaint he was incarcerated. The most recent information he has provided to the court indicates that he now resides at a private address in San Francisco.

Having reviewed the amended complaint in detail, the court finds that there is sufficient "similarity in the factual background of [plaintiff's] claim[s]", *Coughlin v. Rogers*, 130 F.3d 1348, (9th Cir. 1997), that they are properly joined. Specifically, all of plaintiff's cognizable claims arise from events which occurred over a period of approximately two months in late 2002 and early 2003, and which took place at San Francisco County Jail numbers 1, 2 and 3, all of which are in the same building and between which plaintiff was transferred back and forth during the relevant time period. Moreover, with respect to at least some of his claims, plaintiff alleges facts from which the reasonable inference to be drawn is that the defendants at one county jail knew about incidents involving plaintiff which had occurred at another county jail, and acted on the basis of that information. Accordingly, the court finds plaintiff may proceed with his amended complaint as discussed below.

## DISCUSSION

*A.  Standard of Review*

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *Id.* at 1915A(b)(1),(2). Pro se pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a violation of a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged deprivation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

//

B.  *Legal Claims*

All but one of the claims alleged by plaintiff occurred between November 21, 2002 and January 21, 2003, and all but two of the claims arose from events which took place when plaintiff was incarcerated at San Francisco County Jail numbers 1, 2 and 3 during that period.

1.  *County Jail #1*

Plaintiff alleges that on November 21, 2002 he was assaulted and injured without cause by Deputies Madden, Huntoon, Im, Balmy, Rodriguez, and Wong. He further alleges that on December 10, 2002 he was assaulted by Deputy Madden after complaining about him to Chief Dempsey, and that Deputy Sung joined the assault. He was then put in a safety room by Deputies Madden, Sung, and Im, where he was again attacked by Madden. Liberally construed, these allegations present cognizable claims against the named defendants for the use of excessive force. *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

Plaintiff alleges that immediately after the November 21, 2002 assault he was denied medical treatment by the deputies and by Nurses James and Jackie, and that the next day he was denied medical treatment by Captain Butler and Nurses James and Lisa. He alleges that immediately after the December 10, 2002 assault he was denied medical treatment by Nurses James and Linda, and that Deputy Sung threw cold water on him and turned on the air-conditioning while he was naked in the safety cell. He further alleges that on December 22, 2002 Nurses Evangelica and Bacari denied him medical treatment for back pains he was suffering from the assault. Liberally construed, these allegations present cognizable claims against the named defendants for deliberate indifference to plaintiff's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976)

2.  *County Jail #2*

Plaintiff alleges that on November 26, 2002 Deputy Neu seized his

3

property during a cell search, and that on November 28, 2002 Deputies Hernandez and Neu and Sgt. Martindale destroyed his personal property during a cell search. These allegations do not state a constitutionally cognizable claim for relief. *See Parratt v. Taylor*, 451 U.S. 527, 535-44 (1981) (no claim for negligent loss of inmate's personal property), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (no claim for intentional destruction of inmate's property). Nor does plaintiff's allegation that on November 9, 2002 Deputy Fung refused to feed him dinner rise to the level of a deprivation that is sufficiently serious to violate the Eighth Amendment. *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (substantial deprivations of shelter, food, drinking water or sanitation are sufficiently serious to satisfy the objective component of an Eighth Amendment claim). Accordingly, these claims are DISMISSED.

Plaintiff alleges that while he was housed on D-Block in disciplinary lock-up from November 26 through December 5, 2002, Lieutenants Cassey and Walker denied his requests to be placed in protective custody. He similarly alleges that on January 4, 2003 Lt. Walker and Sgt. Wallace denied his requests for protective housing even though he had been threatened previously by other inmates on D-Block, and that Sgt. Wallace then housed him with a mentally ill inmate. He alleges that after his cellmate began to "start trouble" with him on January 9, 2003, he asked to be placed in a safety cell for protective custody, but Sgt. Wallace and Deputies Hawkins and Winters denied his requests, even though other inmates were encouraging the combative inmate to harm plaintiff. However, plaintiff did get placed in protective housing on the next shift.

Plaintiff's allegations do not state a claim for relief. The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, the failure of prison officials to protect inmates from attacks by other inmates violates the Eighth

4

Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate safety. *Id. at* 834. Here, plaintiff has alleged no facts which show that he suffered an objectively sufficiently serious injury because he was denied housing in protective custody. Accordingly, these claims are DISMISSED.

Plaintiff claims that on November 29, 2002 Deputy Neu opened the windows in his cell, causing cold air to blow in for over eight hours. He further claims that on January 3, 2003, while in a safety cell, he was denied clothing or blankets for over six hours by Deputies Coventing and Washington and Nurse Esther while the air conditioning was on. These allegations do not state constitutionally cognizable claims for relief because they do not evidence deliberate indifference to plaintiff's health or safety. Although the Eighth Amendment protects against cruel and unusual punishment, this does not mean that federal courts can or should interfere whenever prisoners are inconvenienced or suffer de minimis injuries. *See, e.g., Anderson v. County of Kern*, 45 F.3d 1310, 1314-15 (9th Cir. 1995) (temporary placement in safety cell that was dirty and smelled bad did not constitute infliction of pain); *Hernandez v. Denton*, 861 F.2d 1421, 1424 (9th Cir. 1988) (allegation that inmate slept without mattress for one night is insufficient to state Eighth Amendment violation and no amendment can alter that deficiency), *judgment vacated on other grounds*, 493 U.S. 801 (1989); *Holloway v. Gunnell*, 685 F.2d 150 (5th Cir. 1985) (no claim stated where prisoner forced to spend two days in hot dirty cell with no water); *Evans v. Fogg*, 466 F. Supp. 949 (S.D.N.Y. 1979) (no claim stated by prisoner confined for twenty four hours in refuse strewn cell and for two days in flooded cell). Because plaintiff alleges no more than de minimis injury his claims are not constitutionally cognizable and are therefore DISMISSED.

Plaintiff also claims that on January 6, 2003 Deputy Murphy opened all of the windows in his cell and left them open overnight in retaliation for plaintiff having filed

5

a grievance against Murphy. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).  Although a prisoner need not demonstrate a total chilling of his First Amendment rights in order to establish a retaliation claim, *see id.* at 568-69, plaintiff has alleged no facts from which it can be inferred that Deputy Murphy's actions chilled the continued pursuit of plaintiff's grievance against him.  Accordingly, this claim is DISMISSED.

Plaintiff alleges that on November 28, 2002 during a cell search he was assaulted by Deputy Castro without cause.  He also alleges that on January 14, 2003, while he was en route to new housing, he was assaulted by Deputy Miller because he had complained to Lt. Peacoo that his artwork had been confiscated.  He further alleges that he was attacked twice on January 22, 2003: first by Sgt. Freeman, Deputy Miller and Deputy Fields when he was in a safety cell, and then at 2:30 in the morning by Deputies Prato, Murphy, Sanprano and Forde, whom Lt. Peacoo refused to order to stop.  Liberally construed, these allegations state cognizable claims against the named defendants for the use of excessive force.

   3.  *County Jail #3*

Plaintiff alleges that on December 27, 2002 Sgt. Ma ordered him into a safety cell and then taken to disciplinary lockup, where he was refused food and bedding by Deputy Paddillia, and was assaulted by Deputies Paddillia and Bliss.  Plaintiff further claims that Sgt. Ma denied him medical attention and water for his injuries and ordered Nurse Nina not to let him out of the safety cell for twenty four hours.  Plaintiff's allegations of assault state cognizable claims for relief against Deputies

6

Paddillia and Bliss for the use of excessive force, and for deliberate indifference to his serious medical needs against Sgt. Ma.

Plaintiff claims that on December 28, 2002 Deputy Shea threw away his medical supplies which were prescribed for varicose veins and his personal property during a property search. Plaintiff has not alleged facts which show that Deputy Shea acted with deliberate indifference to his serious medical needs by throwing away his medical supplies, or that he suffered injury as a result thereof. Accordingly, this claim is DISMISSED. Plaintiff's property claim is also DISMISSED for failure to state a constitutionally cognizable claim for relief.

Plaintiff alleges that on December 29, 2002 Deputy Ng did not discipline an inmate who threw urine on plaintiff, and then told other inmates that plaintiff had complained, thereby labeling him as a snitch. While deliberately spreading a rumor that a prisoner is a snitch may state a claim for violation of a prisoner's right to be protected from violence while in state custody, *see Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989), plaintiff's allegations fail to state such a claim because he has alleged no objectively sufficiently serious injury which occurred because of Deputy Ng's actions. *See Farmer*, 511 U.S. at 834. Accordingly, this claim is DISMISSED.

Plaintiff alleges that on January 1, 2003 Sgt. More ordered Deputies Lelu, Black, Harrison, Pice #1783, P. Luual (#1556) and Gonzo to strip him and put him in a safety cell because he asked Deputies Williams and Harrison "why they were being racist toward him." Sgt. More then ordered Deputy Lelu to cut off plaintiff's clothing and boots with a large pair of scissors. Plaintiff's allegations do not state a constitutionally cognizable claim for relief. An inmate's placement in segregated housing for administrative reasons does not implicate a constitutionally protected interest unless the deprivation suffered because of the placement is one of real substance, that is, the deprivation imposes "atypical and significant hardship on the

7

inmate in relation to the ordinary incidents of prison life." See Sandin v. Conner, 515 U.S. 472, 484 (1995). Typically, placement in segregated housing in and of itself does not implicate a protected liberty interest. See Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003); see, e.g., Sandin, 515 U.S. at 485-86 (inmate's thirty-day placement in disciplinary segregation, where conditions mirrored conditions imposed upon inmates in administrative segregation and protective custody, did not result in type of atypical, significant deprivation for which state might create liberty interest); Mujahid v. Meyer, 59 F.3d 931, 932 (9th Cir. 1995) (no liberty interest when inmate placed in disciplinary segregation for fourteen days). The facts alleged by plaintiff do not rise to the level of an "atypical and significant hardship." Importantly, plaintiff's complaint shows that no more than two days later he had been moved to the general population at County Jail #2. Accordingly, this claim is DISMISSED.

*4.     County Jail #8*

Plaintiff alleges that on January 1, 2003 he was assigned medical housing treatment at County Jail #8 by Nurse Kate, but was refused treatment by facility commander Captain Ideta. Plaintiff states that Deputy Stanley told him that Ideta did not want plaintiff at his facility. Plaintiff's allegations fail to state a claim for deliberate indifference to his serious medical needs because he has alleged no facts which show that Captain Ideta knew that plaintiff faced a substantial risk of serious harm and that because of Ideta's actions he suffered resulting harm. See McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). And, as noted above, the complaint shows that on or before January 3, 2003 plaintiff was transferred to County Jail #2. Accordingly, this claim is DISMISSED.

*5.     County Jail #9*

Plaintiff alleges that on August 10, 2003 he was assaulted by Deputy Wells at County Jail #9. Because this claim arose several months after plaintiff filed this

action, it is a supplemental claim.  *See* Fed. R. Civ. P. 15(d).  The power of the court to grant supplemental pleadings is discretionary and "upon such terms as are just." *Id.*

The claim alleged by plaintiff introduces a separate, distinct and new cause of action which has no relation to the claims set forth in the original complaint. Therefore, the court exercises its discretion to deny plaintiff leave to add this new claim to this action.  *See Planned Parenthood of So. Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997); *Keith v. Volpe*, 858 F.2d 467, 474 (9th Cir. 1988).  Accordingly, this claim is DISMISSED without prejudice to plaintiff filing a new civil rights complaint raising this cause of action should he so choose.

## CONCLUSION

1. Plaintiff states cognizable claims for the use of excessive force and for deliberate indifference to his serious medical needs.  The claims will be served on the appropriate defendants, as set forth below.  All other claims and defendants are DISMISSED from this action.

2. The clerk of the court shall issue summons and the United States Marshal shall serve, without prepayment of fees, copies of the amended complaint (docket no. 13), without the lodged exhibits, and copies of this order on the following defendants: (1) at San Francisco County Jail #1: Deputies Madden, Huntoon, Im, Balmy, Rodriguez, Wong and Sung; Captain Butler; Nurses James, Jackie, Lisa, Linda, Evangelica and Bacari; (2) at San Francisco County Jail #2: Deputies Castro, Miller, Fields, Prato, Murphy, Sanprano and Forde; Sgt. Freeman; Lt. Peacoo; (3) at San Francisco County Jail #3: Deputies Paddillia and Bliss, and Sgt. Ma.

The clerk shall also mail a courtesy copy of the amended complaint and this order to the San Francisco City Attorney's Office.  The clerk also shall serve a copy of this order on plaintiff.

3. In order to expedite the resolution of this case, the court orders as follows:

a. No later than sixty days from the date of service, defendants shall file a motion for summary judgment or other dispositive motion. The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56, and shall include as exhibits all records and incident reports stemming from the events at issue. If defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the court prior to the date their summary judgment motion is due. All papers filed with the court shall be promptly served on the plaintiff.

b. Plaintiff's opposition to the dispositive motion, if any, shall be filed with the court and served upon defendants no later than thirty days from the date the motion was served upon him. Plaintiff must read the attached page headed "NOTICE -- WARNING," which is provided to him pursuant to *Rand v. Rowland*, 154 F.3d 952, 953-954 (9th Cir. 1998) (en banc), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

If defendants file an unenumerated motion to dismiss claiming that plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a), plaintiff should take note of the attached page headed "NOTICE -- WARNING (EXHAUSTION)," which is provided to him as required by *Wyatt v. Terhune*, 315 F.3d 1108, 1120 n. 4 (9th Cir. 2003).

c. If defendants wish to file a reply brief, they shall do so no later than fifteen days after the opposition is served upon them.

d. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the court so orders at a later date.

4. All communications by plaintiff with the court must be served on defendants, or defendants' counsel once counsel has been designated, by mailing a true copy of the document to defendants or defendants' counsel.

5. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16-1 is required before the parties may conduct discovery.

6. It is plaintiff's responsibility to prosecute this case. Plaintiff must keep the court informed of any change of address by filing a separate paper with the clerk headed "Notice of Change of Address." He also must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED.**

Dated: 12/11/06

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\CR.03\BROWNE047.Serve.ECK

# NOTICE -- WARNING
# (SUMMARY JUDGMENT)

If defendants move for summary judgment, they are seeking to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.

Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact--that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.

**NOTICE -- WARNING**

**(EXHAUSTION)**

If defendants file an unenumerated motion to dismiss for failure to exhaust, they are seeking to have your case dismissed. If the motion is granted it will end your case.

You have the right to present any evidence you may have which tends to show that you did exhaust your administrative remedies. Such evidence may be in the form of declarations (statements signed under penalty of perjury) or authenticated documents, that is, documents accompanied by a declaration showing where they came from and why they are authentic, or other sworn papers, such as answers to interrogatories or depositions.

If defendants file a motion to dismiss and it is granted, your case will be dismissed and there will be no trial.