UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DARREN BROWNE, aka AARON BROWN,

    Plaintiff,

    v.

SAN FRANCISCO SHERIFFS DEPARTMENT, et al.,

    Defendants.

No. C 03-0047 PJH (PR)

**ORDER DISCHARGING ORDER TO SHOW CAUSE; DENYING MOTION TO STRIKE; GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**

(Docket Nos. 35, 64, 67)

## INTRODUCTION

Plaintiff Darren Browne, a former California pretrial detainee, filed this civil rights action seeking redress for alleged injuries caused by the officers and medical staff of the San Francisco Sheriffs Department. After plaintiff filed his second amended complaint[1], the court dismissed several claims and defendants in its December 11, 2006 Order of Partial Dismissal and Service. The remaining defendants filed a motion for summary judgment on the remaining claims. Plaintiff filed an opposition with the court, but failed to serve copies on defendants, who, in response, filed a motion asking the court to strike plaintiff's opposition and deem it forfeited, and grant their motion for summary judgment. The court issued an order to show cause re plaintiff's failure to serve, and plaintiff responded. For the following reasons, the court DISCHARGES the order to show cause, DENIES the motion to strike, and GRANTS IN PART and DENIES IN PART the motion for summary judgment.

## BACKGROUND

---

[1] The court dismissed plaintiff's first two complaints for failure to state a claim.

Plaintiff's cognizable claims arise from events which occurred over a period of approximately two months in late 2002 and early 2003 at the San Francisco County Jail. Order of Partial Dismissal and Service ("ODS") at 3. The operative complaint is 20 handwritten, single-spaced pages, containing plaintiff's allegations against nearly 50 defendants, all of whom are allegedly responsible for abusing him in some way during the two-month period of his pretrial incarceration. The claims that survived the initial review are for both excessive force and denial of medical treatment at the hands of the 26 remaining defendants.

Plaintiff alleges that on November 21, 2002, while in custody at the San Francisco County Jail, he was assaulted and injured without legitimate cause by Deputies Madden, Huntoon, Im, Balmy, Rodriguez, and Wong. *Id*. Plaintiff further alleges that on November 28, 2002, during a cell search, he was assaulted by Deputy Castro without cause. *Id*. at 6. He further alleges that on December 10, 2002, he was assaulted by Deputy Madden after complaining about him to Chief Dempsey, and that Deputy Sung joined the assault. *Id*. at 3. He was then put in a safety room by Deputies Madden, Sung, and Im, where he was again attacked by Madden. *Id*.

Plaintiff also alleges that immediately after the November 21, 2002 assault he was denied medical treatment by the deputies and by nurses James and Jackie, and that the next day he was denied medical treatment by Captain Butler and nurses James and Lisa.[2] *Id*. He alleges that immediately after the December 10, 2002 assault he was denied medical treatment by nurses James and Linda, and that Deputy Sung threw cold water on him and turned on the air-conditioning while he was naked in the safety cell. *Id*. He further alleges that on December 22, 2002, nurses Evangelica and Bacari denied him medical treatment for back pains he was suffering from the assault. *Id*.

---

[2] Plaintiff has for the most part used the last names to refer to the sheriff's deputies and officers and the first names of the medical staff. For consistency, the court does so as well; no disrespect to those defendants is intended. Additionally the court has attempted to discern the full names of all defendants and the correct spellings of their names from the declarations filed, and provides them, to the extent available in the conclusion.

Plaintiff also alleges that on January 14, 2003, while he was en route to new housing, he was assaulted by Deputy Miller because he had complained to Lieutenant Peacoo that his artwork had been confiscated. *Id.* at 6. He further alleges that he was attacked twice on January 22, 2003: first by Sergeant Freeman, Deputy Miller and Deputy Fields when he was in a safety cell, and later by Deputies Prato, Murphy, Sanprano and Forde, while Lieutenant Peacoo stood-by, failing to stop the attack. *Id.*

## STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-250. However, "self-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory." *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001); *see also Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) (in equal protection case, conclusory statement of bias not sufficient to carry nonmoving party's

3

burden).

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 248. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corporation*, 477 U.S. at 323.

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). A court may not disregard direct evidence on the ground that no reasonable jury would believe it. *See id.* (where nonmoving party's direct evidence raises genuine issues of fact but is called into question by other unsworn testimony, district court may not grant summary judgment to moving party on ground that direct evidence is unbelievable). The district court may not resolve disputed issues of material fact by crediting one party's version of events and ignoring another. *Wall v. County of Orange*, 364 F.3d 1107, 1111 (9th Cir. 2004). "By deciding to rely on the defendants' statement of fact [in deciding a summary judgment motion], the district court became a jury." *Id.* But "[w]hen opposing parties tell different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 127 S. Ct. 1769, 1776-1777 (2007) (police officer entitled to summary judgment based on qualified immunity in light of video evidence capturing plaintiff's reckless driving in attempting to evade capture which utterly discredits plaintiff's claim that there was little or no actual threat to innocent bystanders).

It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *Id.*; *see, e.g.*, *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-1029 (9th Cir. 2001) (even if there is evidence in the court file which creates a genuine issue of material fact, a district court may grant summary judgment if the opposing papers do not include or conveniently refer to that evidence). Although the district court has discretion to consider materials in the court file not referenced in the opposing papers, it need not do so. *Id.* at 1029.

**DISCUSSION**

*A.    Motion to Strike and Order to Show Cause*

Defendants contend that plaintiff failed to serve them with a copy of his opposition, even though the court, in its April 11, 2007 order, had ordered plaintiff to serve his opposition on defendants, in accordance with Fed. R. Civ. P. 5(a). Defendants' Reply in Support of Motion for Summary Judgment and Motion to Strike at 1. Because of this failure, defendants ask that the court strike plaintiff's opposition and deem that plaintiff has forfeited all opposition to defendants' motion for summary judgment. *Id.*

The court issued an order to show cause regarding plaintiff's failure to serve defendants. Plaintiff filed a timely response indicating that he had suffered an emotional breakdown on or about June 28, 2007, and was unable to follow through with serving his opposition to defendants. In his response, he describes some of his troubles between May and October 2007, resulting in "mental distress and severe depression".

Rule 5(a) requires that, unless otherwise directed by the court or unless a special set of circumstances exist, a copy of every motion filed must be served on the opposing party. Plaintiff has been advised of this requirement by the court in two separate orders filed on December 11, 2006 and April 22, 2007.

Given the circumstances described by plaintiff, the court will not strike plaintiff's opposition. Plaintiff is, however, required to comply with the court's instructions and with the Federal Rules of Civil Procedure. Any future failures to fully comply with all instructions and rules will result in the imposition of harsh sanctions which may include dismissal. The court's leniency at this juncture is based on plaintiff's pro se status, the personal problems he has provided to excuse his non-compliance, and the apparent lack of prejudice to defendants. Defendants filed a timely reply brief in which they noted their awareness that plaintiff had filed a brief with the court, yet they posed no alternative should the court deny their motion, nor did they request an extension of time to reply or that the court provide them with a copy of the opposition. The court can only assume that defendants obtained a copy of the brief on their own.

The order to show cause is DISCHARGED and the motion to strike the opposition brief is DENIED.

B.  *Motion for Summary Judgment*

   1.  *Excessive Force Claims*

       a.  *Background*

Defendants counter the allegations in the complaint, that they used excessive force against plaintiff, in two ways. First, they contend that plaintiff "has no factual support that he received any injuries in conjunction with many of his allegations of excessive force and only *alleges* minor injuries from a few of the instances." Defendants' Memorandum in Support of Motion for Summary Judgment at 1. Defendants assert that the absence of injuries in the allegations of excessive force fatally undercuts plaintiff's contentions. *Id.*

Second, defendants counter plaintiff's allegations by simply denying them. Defendants have submitted nineteen declarations, all of which contain flat denials of plaintiff's allegations and little more. Docket Nos. 37-55. According to these declarations, defendants did not attack, assault, kick, punch, crush, pull, or use excessive or unreasonable force on plaintiff on any of the occasions he alleges. *Id.*

6

*b.     Applicable Federal Law*

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Although the Due Process Clause of the Fourteenth Amendment protects a post-arraignment pretrial detainee from the use of excessive force that amounts to punishment, *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979)), the Ninth Circuit has routinely used the Eighth Amendment as a benchmark for evaluating claims brought by criminal pretrial detainees. *See, e.g.*, *Redman v. County of San Diego*, 942 F.2d 1435, 1443 (9th Cir. 1991). In its prohibition of "cruel and unusual punishment," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive force against prisoners. *See Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The Amendment also imposes duties on these officials, who must provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. *See Farmer*, 511 U.S. at 832; *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 199-200 (1989); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982).

A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *see Farmer*, 511 U.S. at 834 (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, *see id.* (*citing Wilson*, 501 U.S. at 297). When a prisoner claims that prison officials used excessive force, he must show that the officials applied force maliciously and sadistically to cause harm. *See Hudson*, 503 U.S. at 6-7.

*c.     Analysis*

With respect to their first contention, that plaintiff has not made sufficient allegations of injury, the Supreme Court has made clear that "[t]he absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." *Hudson*, 503 U.S. at 7.

7

"When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." *Id.* 9 (internal citation removed). "That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action . . . . The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9-10 (citations and internal quotation marks removed).

In the complaint, plaintiff contends that, without legitimate cause and in retribution, sheriffs' deputies assaulted him, dragged him down prison halls, twisted his wrist, jumped on his back, left him naked and cold in a safety cell for a night, among other acts. These acts allegedly resulted in bruises, abrasions, and back and wrist pain. If plaintiff's allegations are true, defendants' acts could be seen as illegitimate uses of force and certainly more than *de minimis*, resulting in some injury and giving rise to an Eighth Amendment violation. Accordingly, defendants' contention that no serious injury was alleged, is not dispositive.

In support of their second contention, defendants have submitted nineteen declarations in which they flatly deny that plaintiff's allegations are true and that the acts they are accused of committing ever occurred.

Plaintiff's 3-page opposition includes only a general description of the alleged events. However, he has attached to it an Exhibit A which is comprised of several prisoner grievance forms apparently prepared and submitted by him while he was incarcerated. The opposition does refer to these forms as his evidence and the opposition was signed by plaintiff under penalty of perjury, although briefs are not required to be verified. Defendants did not object to plaintiff's evidence or refer to it any anyway in their reply brief. The court finds that the opposition with its attached Exhibit A is the evidentiary

equivalent of a declaration and the court accepts it as such.[3]  As previously noted, self-serving declarations are sufficient to establish a genuine issue of material fact, provided that they state facts based on the declarant's personal knowledge and are not too conclusory.  *Rodriguez,* 265 F.3d at 902.

Although it is not explicitly stated, it appears to the court that the statements contained in the grievance forms are based on plaintiff's personal knowledge of the events.  Thus, the only question is whether the statements are sufficiently detailed or are merely conclusory.  To the extent that plaintiff has named his abuser and described conduct amounting to more than the use of *de minimis* force, from which an intent to apply such force maliciously and sadistically can be inferred, the court finds that the declaration creates a triable issue of fact, notwithstanding the self-serving nature of the declaration and the denials of each of the defendants.  However, to the extent that plaintiff has not identified a particular defendant, has not described the conduct about which he complains, or has provided only his conclusion that excessive force was used, the court finds no triable issue of fact has been created.

A comparison of Ex. A with the complaint reveals that plaintiff named some Sheriff's Department officials in his grievances that he did not name in this lawsuit, or who were previously dismissed.  The court thus ignores the allegations as to them.  It also reveals that the majority of the remaining named defendants are not even mentioned in Ex. A.  Thus, there is no evidence to support the allegations in the complaint, not even plaintiff's own self-serving declaration, as to the following defendants:  Im, Balmy, Rodriguez, Wong, Butler, Sung, Prado, Murphy, Sanprano, Forde, Peacoo (correctly spelled Pecot; *see* Decl. Johna Pecot).

Of the defendants that are named in Ex. A, only five – Castro (Ex. A at 1), Madden (Exhibit A. at 2), Freeman (Ex. A at 7, 9, 12), Fields (Ex. A at 9), and Miller (Ex. A at 9) –

---

[3] Exhibit A is comprised of 13 unnumbered pages which have been numbered by the court as 1 - 13, for ease of reference.

9

are accused of excessive force with a sufficient degree of particularity as to support a viable claim under *Rodriquez*. Although both Paddillia and Bliss are named in Ex. A, plaintiff alleges excessive force in conclusory fashion and does not describe what they did. Ex. A at 4. And a second reference to Paddillia is a claim of bias and deliberate indifference as shown by Paddillia's lies about plaintiff which resulted in his being housed for a time in a safety cell, an allegation that is not before the court. Ex. A at 6. One prisoner grievance form, Ex. A at 13, mentions Ma, but the court, cannot discern from the largely illegible document, any articulation of evidence to support an allegation of excessive force against Ma. Another grievance form, Ex. A at 6, also mentions Ma but also fails to allege any colorable constitutional claim. Huntoon is mentioned in another grievance form, but the allegation is only that Gene (last name illegible) began taunting plaintiff and making jokes about Madden and Huntoon "jumping on me last nite." Ex. A at 10. This hardly suffices as evidence of excessive force against Huntoon. As noted, all remaining named defendants are not mentioned in Ex. A.

Accordingly, the court GRANTS defendants' motion for summary judgment with respect to plaintiff's claims of excessive force as to defendants Im, Balmy, Rodriguez, Wong, Butler, Sung, Prado, Murphy, Sanprano, Forde, Peacoo/Pecot, Paddillia, Bliss, Ma and Huntoon. These claims and these defendants are DISMISSED from the action.

The court DENIES summary judgment as to the following excessive force claims and defendants which are adequately described in Ex. A: Castro, Freeman,[4] Fields, Miller, and Madden.

    2.    *Medical Care Claims*

        a.    *Applicable Federal Law*

Deliberate indifference to a prisoner's serious medical needs violates the Eighth

---

[4] The court's conclusion is based upon the allegation that Freeman grabbed, snatched and threw plaintiff, and not on his fantastical allegation that Freeman tried to kill him by putting a "lethal venemous [sic] white tipped legged spider with white dots on its back" inside plaintiff's cell.

10

Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment. *Id.* at 1059-1060.

A prison official is deliberately indifferent if she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U. S. at 837. A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety. *Id.* The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and have actually drawn the inference. *Id.* If a prison official should have been aware of the risk, but was not, the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

A claim of mere negligence or harassment related to medical problems is not enough to make out a violation of the Eighth Amendment. *Id.*; *see, e.g., Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998) (finding no merit in claims stemming from alleged delays in administering pain medication, treating broken nose and providing replacement crutch, because claims did not amount to more than negligence); *O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir. 1990) (repeatedly failing to satisfy requests for aspirins and antacids to alleviate headaches, nausea and pains is not constitutional violation; isolated occurrences of neglect may constitute grounds for medical malpractice but do not rise to

11

level of unnecessary and wanton infliction of pain).

      *b.    Analysis*

Plaintiff alleges that after the November 21, 2002 assault, he was denied medical treatment by the deputies and by nurses. Compl. at 2.[5] Medical staff refused to treat the "bruises to my legs, arms, and my right wrist [which as with the excessive force claims discussed above] was swollen with cuts." *Id.* Plaintiff further alleges that he received no medical treatment for the November 21 injuries until he was transferred to County Jail No. 2 on November 25, four days later. *Id.* at 3. Plaintiff further alleges that immediately after the December 10, 2002 assault, he was denied medical treatment by nurses James and Linda. ODS at 3. He had back pain, red marks and cuts resulting from the assault, in addition to dizziness and shortness of breath. Compl. at 4-5. He also alleges that medical staff refused to give him clothing when he was naked and cold after having been in the safety cell. *Id.* He further alleges that on December 22, 2002, nurses Evangelica and Bacari refused to treat him for back pain.[6] ODS at 3.

In support of their motion for summary judgment, defendants submit the declarations of medical staff members Bagares, Jackie, Linda, James, and Evangelica. The sixth medical staff member who is a defendant, Lisa, has not been identified by plaintiff or defense counsel with a last name, and as a consequence has not been served. *See* Decl. Robert Bonta. The unrebutted evidence as to Bagares is that he ceased working for the Jail Medical Services in September 2002, and was not even present during plaintiff's period of incarceration. *See* Decl. Joseph Bagares. Accordingly, defendants Lisa and Bacari/Bagares are DISMISSED. Although the complaint suggests that the medical care allegations are meant to apply to non-medical staff, the actual evidence submitted by plaintiff refers only to conduct of the medical staff with respect to these claims. Thus the

---

[5] "Compl." refers to the operative complaint, i.e., the second amended one.

[6] The correct names of the defendants are apparently Bagares and Evangeline. *See* Decl. Joseph Bagares; Decl. Evangeline Anacleto.

12

medical care claims, to the extent they are meant to be alleged as to non-medical staff, are DISMISSED.

The remaining four medical staff members have all submitted declarations similar to those submitted by the sheriff's department officials, and have flatly denied plaintiff's allegations.

As with the excessive force claims discussed above, plaintiff's opposition, with its Ex. A, is the only evidence plaintiff submitted and is consequently the only source of evidence that might create a triable issue and thereby defeat defendants' motion. Ex. A contains only three references that bear on the medical care claims. They are summarized as follows:

Page 2 is a December 15, 2002 grievance sent by plaintiff to the attention of Dr. Joe Goldenson in which plaintiff advises that he is having extreme back pains and needs pain medication due to an injury to his back when he was attacked by Madden on December 10, 2002. He requests to be seen and says that nurses Pauline (not a defendant), Bacari, Linda, James, Jackie, Evangelica, Lisa and other med-morning staff have deliberately not responded to his verbal or written inquiries.

Page 4 is a December 30, 2002 grievance. Although it is not entirely clear to whom it was sent, it reflects plaintiff's complaint that staff (perhaps both physicians and nurse practitioners) "are medically neglecting to reasses [sic] further repeated injuries to my right wrist, right knee and back pains resulting also from an [sic] recent attack on December 27, 2002..." He further complains that all of his written requests and inquiries to be seen by a doctor and "promises that I would be seen by a doctor has [sic] not materialized and continues to be ongoing medical neglect." And he claims to have instructed "Nurse Kate (pysch)" on December 28, 2002 and "Nurse Jackie and Elissa (J3)" that he needed to see a doctor.

Page 10 is a largely illegible November 22, 2002 grievance in which plaintiff appears to claim that someone (perhaps Gene who is really James) said that he would not

1 assist plaintiff because plaintiff is a jive turkey and that's why he (perhaps Gene or James)
2 told the nurse (not sure who) that he would not assist plaintiff in getting his medication.

3   This latter reference does not support the allegations of the complaint with respect
4 to the November 2002 incident.  There are simply no facts in this grievance that establish
5 with any degree of clarity that plaintiff suffered from a serious medical need or that any
6 defendant was deliberately indifferent to that need.  Moreover, the complaint makes it clear
7 that plaintiff received medical attention, albeit four days later.

8   The allegations involving the December 2002 incident, are that he was denied
9 treatment by nurses James and Linda on December 10, and by nurses Evangelica and
10 Bacari on December 22.

11   The December 30 grievance does not appear to be related to the December 10
12 attack or to the December 22 refusal by Evangelica and Bacari.  Rather that grievance was
13 filed in response to a subsequent attack which allegedly occurred on December 27, 2002.
14 Moreover, the grievance suggests that his real complaint was that he wasn't seen by a
15 doctor not that he didn't receive *any* medical attention, as the grievance refers to contact
16 that he had with a nurse on December 28.  Accordingly, plaintiff's declaration does not
17 support these particular allegations of his complaint.

18   That leaves the December 15, 2002 grievance as the remaining evidence in support
19 of the these allegations.  This grievance obviously does not support the allegation that he
20 was denied treatment on December 22, as it predates that denial.  It does, however,
21 support the allegation that he was denied medical treatment after the December 10, 2002
22 attack.  In the grievance plaintiff requests medical attention and pain medication for what he
23 describes as extreme back pain.  And he reports that seven nurses have deliberately
24 ignored his prior requests for medical attention.

25   However, even viewing the evidence in a light most favorable to plaintiff, the court is
26 not persuaded that plaintiff has raised a triable issue.  The totality of the evidence
27 surrounding plaintiff's short stay in custody shows that plaintiff alleged at least 25 acts of
28

14

abuse by combinations of 50 individual defendants, resulting in the filing of numerous grievances. While the exact chronology of these alleged abuses is difficult to discern from plaintiff's long and rambling complaint, the actual evidence that he has submitted in support of those allegations, is quite thin. The court finds that the complaint and Ex. A reflect that medical staff responded to plaintiff on at least some of the occasions for which he demanded attention and that it is impossible to find on plaintiff's evidence that those responses were either inadequate or too late. The grievances that comprise Ex. A also suggest that they were primarily filed because plaintiff was unhappy about the delay in the provision of pain medication and medical attention, and with having that medical attention provided by nurses instead of doctors. Plaintiff has produced no evidence as to the seriousness of his injuries or the extent of his pain, and has not provided even in his own self-serving declaration that any of his injuries significantly affected his daily activities. The court is unable to determine, on the basis of plaintiff's conclusory allegations, if the delay in providing pain medication or if the utilization of nurses instead of doctors, arose to constitutional proportions. Nor has plaintiff provided any evidence that the medical staff was both aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and actually drew that inference. As previously noted, a claim of mere negligence or harassment related to medical problems is not enough to make out an Eighth Amendment violation. *Frost v. Agnos*, 152 F.3d at 1130.

Accordingly, the court GRANTS defendants' motion for summary judgment with respect to plaintiff's claims of deliberate indifference to his serious medical needs as to these defendants: James, Jackie, Lisa, Linda, Evangelica/Evangeline, and Bacari/Bagares.

**CONCLUSION**

For the foregoing reasons, the court DISCHARGES the order to show cause and DENIES the motion to strike plaintiff's opposition.

As to the excessive force claims, because there is a dispute as to material facts, the court DENIES summary judgment on plaintiff's claims against Harold Castro, Matthew

1  Freeman, Fitzgerald Fields, Scott Miller, and John Madden.

2  The court GRANTS the motion for summary judgment on the excessive force claims against the following defendants: Mark Huntoon, Pauler Im, Richard Balmy, Saul Rodriguez, Eric Wong, Sabrina Butler, (FNU) Sung, Miguel Prado/Prato, David Murphy, (FNU) Sanprano, David Forde, Johna Pecot/Peacoo, Chinli Ma, (FNU) Paddillia, and Milton Bliss.

The court GRANTS the motion for summary judgment on the medical care claims against James Hafalia, Jackie Savage, Linda Hofer, and Evangeline/Evangelica Anacleto, and DISMISSES the claims against Joseph Bagares/Bacari and Lisa (LNU) for the reasons stated above.

**FUTURE PROCEEDINGS**

The first order of business with regard to the remaining excessive force claim against five defendants, is a mandatory settlement conference. Plaintiff should be represented at the conference by an attorney. Plaintiff advised in his response to the order to show cause, that a local attorney, Ms. Harriett Ross, who is familiar to the court, has expressed a willingness to "take over the future proceedings once summary judgement has been ruled on." Accordingly, plaintiff has 30 days to secure representation and to advise the court of such. Ms. Ross or whoever plaintiff retains, must enter an appearance in writing no later than December 19, 2007. Thereafter, this matter will be referred to Magistrate Judge Chen to conduct a settlement conference in January or February 2008. If the parties cannot resolve the remaining claims, a trial scheduling conference will be held.

**IT IS SO ORDERED.**

**Dated: November 19, 2007**

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\CR.03\BROWNE047\SJorder.md.pjh

16