UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DARREN BROWNE, aka AARON BROWNE,

    Plaintiff,

    v.

SAN FRANCISCO SHERIFF'S DEPARTMENT, et al.,

    Defendants.

_____/

No. C 03-0047 PJH

**ORDER GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION AND MOTION FOR SUMMARY JUDGMENT**

    Defendants' motion for reconsideration of the court's November 19, 2007 order granting summary judgment in part and denying it in part, and defendants' motion for summary judgment, came on for hearing before this court on May 13, 2009. Plaintiff did not appear, and defendants appeared by their counsel Robert A. Bonta. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendants' motions.

## BACKGROUND

    In January 2003, plaintiff Darren Browne, aka Aaron Browne, a former California pretrial detainee proceeding in propria persona, filed this civil rights action against nearly fifty defendants, alleging that he had been injured by officers and medical staff of the San Francisco County Sheriff's Department. The court dismissed the original complaint and the first amended complaint, and plaintiff filed the second amended complaint on September 22, 2003. On December 11, 2006, the court dismissed several claims and approximately half of the defendants, and ordered service. On April 9, 2007, the remaining defendants

filed a motion for summary judgment. On November 19, 2007, the court granted the motion for summary judgment in part and denied it in part.

The factual background is as set forth in the November 19, 2007 order. Briefly, plaintiff alleged in the second amended complaint that on November 21, 2002, while in custody at the San Francisco County Jail, he was assaulted without cause by Deputies Madden, Huntoon, Im, Balmy, Rodriguez, and Wong; that on November 28, 2002, during a cell search, he was assaulted without cause by Deputy Castro; and that on December 10, 2002, after complaining about Deputy Madden to Chief Dempsey, he was assaulted by Deputy Madden and Deputy Sung.

Plaintiff alleged further that after the November 21, 2002 assault, the December 10, 2002 assault, and the December 22, 2002 assault, he was denied medical treatment by various deputies and nurses; and that on December 10, 2002, Deputy Sung threw cold water on him and turned on the air-conditioning.

Finally, plaintiff alleged that on January 14, 2003, while en route to new housing, he was assaulted by Deputy Miller because he had complained to Lieutenant Peacoo (correctly spelled "Pecot") that his artwork had been confiscated; and that he was attacked twice on January 22, 2003, once by Sgt. Freeman, Deputy Miller, and Deputy Fields, and a second time by Deputies Prato, Murphy, Sanprano, and Forde, with the acquiescence of Lieutenant Pecot.

The court found no evidence to support the excessive force claims as to fifteen of the defendants, and dismissed those defendants from the case. The court denied the motion for summary judgment as to the excessive force claims alleged against defendants Castro, Freeman, Fields, Miller, and Madden. In addition, the court granted the motion with respect to the claims of deliberate indifference to serious medical needs alleged against the non-medical staff, and also the claims alleged against the defendant medical personnel.

On February 29, 2008, the court appointed counsel to represent plaintiff in this action. On January 28, 2009, defendants moved pursuant to Civil Local Rule 7-9(a) for leave to file a motion for reconsideration of the November 19, 2007 order, arguing that the

court had made findings that were contrary to the record presented. At the same time, defendants moved for summary judgment as to the remaining defendants. On January 29, 2009, the court granted the motion for leave to file a motion for reconsideration.

**DISCUSSION**

A.   Motion for Reconsideration

  1.   Legal Standard

The Federal Rules of Civil Procedure do not address motions for reconsideration of interlocutory orders. Under the Civil Local Rules of this court, a party may seek reconsideration of "any interlocutory order" made in a case "[b]efore the entry of judgment adjudicating all of the claims and the rights and liabilities of all the parties in a case." Civil L.R. 7-9(a). In seeking reconsideration, the moving party must specifically show

> (1)   That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party must also show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2)   The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3)   A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civil L.R. 7-9(b).

  2.   Defendants' Motion

In opposing defendants' prior motion for summary judgment, plaintiff supported his factual assertions with copies of several prisoner grievance forms attached to his opposition as Exhibit A. He had originally prepared and submitted these grievance forms while he was in custody at the San Francisco County Jail from November 2002 through January 2003. The court found that Exhibit A was the evidentiary equivalent of a declaration. November 19, 2007, Order at 8-9.

It was based on this evidence that the court found that "[o]f the defendants that are named in Ex. A, only five – Castro (Ex. A at 1), Madden (Exhibit A at 2), Freeman (Ex. A at

7, 9, 12), Fields (Ex. A at 9) and Miller (Ex. A at 9) – are accused of excessive force with a sufficient degree of particularity as to support a viable claim under [Rodriguez v. Airborne Express, 265 F.3d 890, 902 (9th Cir. 2001)]." November 19, 2007 Order at 9-10.

In their motion for reconsideration, defendants assert that the court mistook separate incidents relating to Deputies Castro, Madden, and Miller described in Exhibit A as support for entirely different incidents relating to Deputies Castro, Miller, and Madden alleged in the second amended complaint.

Defendants note that plaintiff alleged in the second amended complaint that Deputy Castro was involved in a November 28, 2002 incident involving excessive force against plaintiff, and that the court referred to this allegation in the November 19, 2007 order. Defendants note further that the court denied summary judgment as to the excessive force claims alleged against Deputy Castro, based on the evidence attached in Exhibit A. Defendants argue, however, that the evidence the court referred to and that plaintiff attached to his opposition related to a January 4, 2003 incident that was unrelated to the November 28, 2002 incident.

Defendants assert that the actual grievance form described an incident occurring on January 4, 2003, in which plaintiff was being escorted from a safety cell. They contend that the grievance form says nothing about a "cell search" (alleged as part of the November 28, 2002 incident), and clearly indicates that the date of the incident was January 4, 2003. The grievance form states as follows:

> Deputy Castro on escort from the safety cell applied unecessary force in the bending and twisting of my right wrist – which I suffer from continue pain already due to prior deputies assaults & safety cells. I asked Castro to ease off & explained to Johnson who had my left hand to witness and look how upward high Castro was bending my wrist when it was unecessary as I was being walked.

Thus, defendants contend, the grievance form and the allegations in the complaint relate to two separate and distinct incidents, and the "evidence" contained in the grievance form therefore cannot be used to oppose summary judgment on the claim regarding the use of excessive force on November 28, 2002.

4

For similar reasons, defendants argue that claims against Deputy Madden relating to the November 21, 2002 incident should be dismissed. Defendants note that plaintiff attached a grievance form as part of Exhibit A, which relates to the alleged December 10, 2002 incident involving Deputy Madden, but that he provided no evidence whatsoever relating to the November 21, 2002 incident.

Defendants also contend that Deputy Miller should be dismissed as to allegations relating to the January 14, 2003 incident. Defendants note that plaintiff attached a grievance form as part of Exhibit A, which relates to the alleged January 22, 2003 incident involving Deputy Miller, but contend that he provides no evidence relating to the purported January 14, 2003 incident.

The court has reviewed the second amended complaint and plaintiff's opposition to the prior motion for summary judgment, along with the grievance forms attached as Exhibit A, and agrees with defendants that plaintiff has provided no evidence to support the claim against Deputy Castro regarding the alleged November 28, 2003 incident, the claim against Deputy Madden relating to the alleged November 21, 2002 incident, and the claim against Deputy Miller relating to the alleged January 14, 2003 incident.

The second amended complaint alleges incidents occurring on November 21, 22, 25, 26, and 28, 2002; December 9, 10, 12, 27, 28, 29, 2002; and January 1, 3, 4, 6-7, 9, 14, and 22, 2003. Exhibit A contains copies of grievance forms relating to incidents occurring on November 22, 2002; December 10, 15, 27-28, and 30, 2002; and January 4, 8, 22, and 23, 2003.

Only five dates of incidents described in the grievance forms match dates of incidents alleged in the second amended complaint – November 22, 2002, December 10 and 28, 2002, and January 4 and 22, 2003. However, of the incidents alleged on those five dates, only the January 22, 2003 incident is described in the second amended complaint and also in a grievance form.

There is no grievance form (and thus no evidence) relating to any incident occurring on November 28, 2002, November 21, 2002, or January 14, 2003. The November 22,

5

2002 grievance form – the only grievance relating to any incident in the month of November 2002 – refers only to an alleged denial of medical treatment, and does not mention an attack by any of the defendant deputies.  The December 15, 2002 grievance form references an alleged attack on plaintiff by Deputy Madden on December 10, 2002, but none of the grievance forms relate to an alleged attack on November 21, 2002.  None of the grievance forms relate to any incident involving Deputy Miller assaulting plaintiff for complaining about the confiscation of his artwork (the alleged January 14, 2003 incident).

Accordingly, having reconsidered the evidence, the court finds that summary judgment must be GRANTED as to the claim against Deputy Castro regarding the alleged November 28, 2002 incident, the claim against Deputy Madden relating to the alleged November 21, 2002 incident, and the claim against Deputy Miller relating to the alleged January 14, 2003 incident.

Because the claim involving the alleged November 28, 2002 incident is the only claim asserted against Deputy Castro in the second amended complaint, and because plaintiff has provided no evidence to support this claim or to counter the evidence provided by defendants, the court finds that Deputy Castro must be dismissed from the case.  Similarly, because the claim against Deputy Madden relating to the alleged November 21, 2002 incident is unsupported by any evidence, and because the only other claim of excessive force asserted against Deputy Madden (the December 10, 2002 claim) is also unsupported by any evidence, the court finds that Deputy Madden must be dismissed from the case.

Thus, the only claims remaining in the case are the excessive force claims asserted against Sergeant Freeman and Deputies Fields and Miller, arising from the January 22, 2003, incident.

B.   Motion for Summary Judgment

   1.   Legal Standard

Summary judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

6

Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Southern Calif. Gas. Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 324-25. If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

2.  Defendants' Motion

Defendants argue that summary judgment should be granted as to plaintiff's remaining excessive force claims against Sergeant Freeman, and Deputies Fields and Miller,[1] for two reasons. First, they assert that plaintiff has served verified written discovery responses indicating that he suffered no physical injuries, and that any force used by defendants should therefore be considered, at best, de minimis. Second, they contend that plaintiff has no evidence that any defendant used force "maliciously and sadistically for the very purpose of causing harm."

Defendants' first argument is that summary judgment is appropriate because there

---

[1] Defendants also move for summary judgment as to the claims asserted against Deputies Castro and Madden. Those claims, and the basis for their dismissal, are addressed above in the discussion of the motion for reconsideration.

7

was no violation of plaintiff's constitutional right regarding the use of force in the prison context. A plaintiff alleging a claim under 42 U.S.C. § 1983 must establish, first, that a person acting under color of state law committed the conduct at issue, and second, that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. White v. Roper, 901 F.2d 1501, 1503 (9th Cir. 1990.

The plaintiff must also show that the defendant's unconstitutional conduct was the actual and proximate cause of the plaintiff's injuries. Id. at 1505-06. Here, it is plaintiff's burden to establish, with evidence, both that his injuries were caused by defendants' conduct, and that defendants' conduct rises to the level of a substantive due process violation.

The Due Process Clause of the Fourteenth Amendment protects a post-arraignment pretrial detainee from the use of excessive force that amounts to punishment. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). In general, for a prisoner excessive force claim, the issue is whether the defendant applied force in a good faith effort to maintain or restore discipline, or instead, did so maliciously and sadistically for the purpose of causing harm. Hudson v. McMillian, 503 U.S. 1, 7 (1992); see also Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

The Ninth Circuit has held that in resolving a due process claim alleging excessive force, the court should consider the following factors: (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, and (4) whether force was applied in a good faith effort to maintain and restore discipline. White, 901 F.2d at 1507.[2]

---

[2] These are similar to the factors set out in Hudson, which arose in the context of an excessive force claim brought by a prisoner under the Eighth Amendment. Those factors are (1) the need for application of force, (2) the relationship between the need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, (4) any efforts made to temper the severity of the forceful response, and (5) the extent of injury suffered by an inmate. Hudson, 503 U.S. at 7. Even though pretrial detainees' claims arise under the Due Process Clause, the Eighth Amendment serves as a benchmark for evaluating those claims. See Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir. 1996).

8

Here, defendants address only one of these four factors, arguing that because plaintiff has attested under oath that he suffered no physical injuries as a result of the alleged instances of use of force, the force used cannot be considered "excessive" under the governing law. Defendants cite to three interrogatory responses provided by plaintiff in response to interrogatories propounded by defendants in May 2008.

First, in response to Interrogatory No. 5, asking plaintiff to state whether he attributed "any physical mental or emotional injuries" to the incident, he responded, "Yes. Emotional PTSD and depression." Plaintiff did not mention any physical injuries.

Second, in response to Interrogatory No. 6, asking him to identify "each injury" he attributed to the incident, and the area of his body affected, plaintiff responded, "PTSD, anxieties, depression and personality disorder," but mentioned no physical injuries or any part of his body that was affected.

Third, in response to Interrogatory No. 17, asking him to identify all injuries or damages he received from the incident, plaintiff responded, "See answer to Interrogatory No. 6 [regarding purported psychological damages only] and 12 [regarding purported loss of income or earning capacity only]." Again, plaintiff did not claim any physical injuries.

Defendants' second argument is that plaintiff has no evidence that any defendant used force with the requisite malice and sadism. Plaintiff's only response to this argument is that "jumping on the back of a prone person" (apparently a reference to allegations in the second amended complaint to the November 10, 2002 incident involving Deputy Madden) "certainly meets the definition adequately."

The Due Process Clause does not protect a pretrial detainee from the use of all force, but only from the use of excessive force that amounts to punishment. See Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). Punishment in the constitutional sense refers to the imposition of penalties for an alleged crime. In the context of detention before trial, a custodial authority may impose restrictions or use force on a detainee in ways that are used in the detention facility to maintain safety and order – "legitimate governmental objectives" – justifying restraints on pretrial detainees. See Bell, 441 U.S. at 538 n.19.

In general, a prisoner plaintiff alleging a constitutional claim of excessive force must allege and prove the unnecessary and wanton infliction of pain. See Whitley v. Albers, 475 U.S. 312, 320 (1986); see also Hudson, 503 U.S. at 5. In the Ninth Circuit, force resulting in the absence of any physical injury fails to rise to the level of a "malicious and sadistic" use of force. White, 901 F.2d at 1507.

Here, the evidence on both sides is thin. With their previous motion for summary judgment, defendants included declarations from most of the defendants, including Sergeant Freeman and Deputy Fields (but not Deputy Miller, whom defendants claimed was on extended medical leave), stating that they had not assaulted plaintiff. For his part, plaintiff provided no declaration, but instead relied on the allegations in the second amended complaint, and also submitted copies of various grievance forms that he had submitted to the Sheriff's Department.

In the second amended complaint, plaintiff alleged as follows with regard to the January 22, 2003 incident:

> On January 22, 2003 at County Jail Two I was assaulted and attacked physically by Sgt Freeman & Deputy Miller #1364 inside a safety cell. Sgt. Freeman enter the safety cell and punching me throwing me to the floor and kicking me then him & Miller #1364 drags me onto another safety cell room and Miller begins punching me twisting my wrist and smashed face into the floor urine hole. Deputy Fields CJ-2 Deputy along with Sgt Freeman began sitting on my body with their weight causing me to grasp for air./ medical treatment denied. Then later Sgt. Freeman delivered a white tip poisonous spider and placed it inside the safety cell.

Amended Cplt at 6-7.

In the relevant grievance form, which consists of only pages 1-4 of what is labeled a 7-page form, plaintiff stated as follows:

> Sgt Freeman used excessive force snatch me out of one safety cell & assault'n me in another. Freeman used excessive force that was not applied in good faith & effort to maintain or restore discipline & used it maliciously & sadistically to cause harm including placing a lethal venemous white tipped legged spider with white dots on its back inside the safety cell he was replacing me in. In violation of the eight Amendment Constitution against excessive force & cruel & unusual punishment as well as attempted murder on my life. [citing cases] In safety cell 1, Nikki from psych signed me out. 9:00 a.m. Miller #1352 brings me medium size clothing. I explain pants are x-tra tight hugging my thighs and upon the back of me: well you're stay'n in there till you put them on and leaves, Sr Martindale arrives tells me he'll take

> care of it, doesn't return, Freeman appears opens the door I'm half dressed (no pants) tells me to put them on he wants to see tells me to turn around to see how they further fit I tell him I've always worn 2xs and I don't wanna be seen in such tight clothing.  Freeman then agrees to go get 2x pants also asks me why I'm in the safety cell: I explained due to late night security housing with Lt. Pecot.  About an half hour Freeman reappears Miller #1352 & Fields (not youg deputy Fields) Freeman opens up the door again and saids so Browne you're refusing to get dressed I thought you were getting me an 2x I said Freeman then saids So you're refusing to come out & get housed before I could finish shak'n my head I was suddenly attacked and grabbed hold of by Freeman say'n I'm tired of your shit snote[unclear] and throws me out the safety cell Miller immediately also attacks me bending my arm Field grabs me too - I'm forcibly being pushed Freman yells don't put him in two, put him in three I then am being pushed face down Sgt Freeman lands a knee into the center of my back Miller #1352 pushes my face near into the urine drain and holds me there Fields saids Browne be cool and follow instruction preventing from further harm happening I remained silent until they left./ Afterward Sr Martindale is told what just happen Freeman reappears all red in the face I tell him look at you you're all red in the face and you just added an assault claim now against you on top of being renamed as an defendant again Freeman responds & winks his eye and saids its just beginning I'm not through with you yet youll see and winks his eye again and leaves off.  I said to Sr Martindale did you just here that I did Martindale said: I then said Freeman knows this is his second time being named as a defendant and when you have a lot of years in your career and do stupid things like this you can't blame me Sr. Martindale then replied to me you know Browne I don't do my job that way I come to work and only do my job thats it nothing else I always come and talk to you don't I I listen to you don't I I then strangely enough he said Browne I have a grievance of yours that I found in my box-mail Nov. 26, 2002 incident with Espinoza yelling top of the morning antics [copy of grievance ends here].

The January 23, 2003 grievance form also appears to refer to the incident of January 22, 2003.  In this grievance form, plaintiff states as follows:

> Sgt. Freeman & Sr Deputy Martindale attempted to end my life inside a safety cell using a poisonous white tip spider (lethal venom). Folded inside of a safety blanket being handed to me inside. Sgt Freeman had just recently finished assaulting me placing me inside from one safety cell to another before pass'n it to me. I saw him and Sr Martindale placing something inside the blanket over near the locker area carrying my food with the safety blanket underneath.  Before handing it to me Sgt Freeman stated its just beginning and weeks his eye and saids on I'm not done with you yet you'll see as he hands me the blanket & Food suspicious I don't eat the food & places it to the side and unfolds the blanket and wraps it around me and lay down on the floor.

In the present motion, defendants rely on plaintiff's responses to Interrogatories Nos. 5, 6, and 17.  Plaintiff provides no additional evidence.  He states in his opposition that "[d]epositions of four of the defendant deputy sheriffs have been taken," and that all agree that they do not remember plaintiff as a violent inmate; and that defendants also deposed

11

plaintiff's former cell mate, who "was able to verify some of the events leading to the defendant being removed from the cell and also corroborated the fact of the rough scare tactics used by the deputies in the jail."

With regard to defendants' argument that summary judgment must be granted because plaintiff has denied any physical injuries, plaintiff contends that in his deposition, he "did describe the discomfort he experiences with his back as a result of the rough treatment he received." In addition, he claims that defendants had him examined by an orthopedist and a psychiatrist, and that they failed to produce copies of the reports, and also asserts that defendants "have obtained extensive medical records of the plaintiff." Plaintiff refers again to the copies of the grievances he previously filed, and contends that he "lodged the shoes that were cut up by the deputies."

None of plaintiff's assertions, however, are supported by any actual evidence presently before the court (other than the previously-filed grievance forms). Plaintiff provided no declaration in opposition to the prior motion for summary judgment (other than the grievances, which the court construed as the evidentiary equivalent of a declaration), and has provided none in opposition to the present motion. Neither plaintiff nor defendants have provided the court with copies of any deposition transcripts, or even any excerpts from deposition transcripts, and neither side has included any medical evidence, whether records, reports, or results of examinations.

A party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in [Rule 56] – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Thus, it is the burden of the party opposing summary judgment to make an affirmative showing on all matters placed in issue by the motion as to which it will have the burden of proof at trial. See Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial § 14:144 (2008) (citing Celotex, 477 U.S. at 323-24). The opposing party's burden is not excused by the fact that the evidence to oppose the motion is possessed by the moving party, so long as there has been full opportunity to conduct discovery.

Anderson, 477 U.S. at 257.

Here, as noted above, there is no evidence supporting the claims regarding any incident except the January 22, 2003, incident involving Sergeant Freeman and Deputies Fields and Miller. As to that incident, the court finds that plaintiff has failed to meet his burden.

In White, the plaintiff alleged that jail officers violated his due process rights when they attempted to place him in a cell with a dangerous inmate. The plaintiff did not dispute that he refused to enter the cell and backed away from the defendant officer. The court found that plaintiff's actions created a need for the officers to apply reasonable force to control him. While the amount and type of force used was disputed by the parties, the court found that White had "not shown that he required or even that he requested medical treatment for the cut wrist and the bruises he allegedly suffered." Id., 901 F.2d at 1507. Nor did he allege that "he lost consciousness at any time, or that he suffered any permanent injury." Id. The court concluded that White had "not made a showing sufficient to establish that the use of force against him was 'excessive' or 'brutal.'" Id.

Here, plaintiff's main claim in the January 22, 2003 grievance form appears to be that Sergeant Freeman used excessive force "maliciously and sadistically to cause harm" by placing a spider in the safety cell before moving plaintiff back in. The court ruled in the November 19, 2007 order, however, that plaintiff could not support his excessive force claim with the "fantastical allegation that Sergeant Freeman tried to kill him by putting a 'lethal venemous [sic] white tipped legged spider with white dots on its back' inside plaintiff's cell." November 19, 2007 Order, at 10 n.4.

Other than the claim regarding the spider, plaintiff asserts that after complaining that plaintiff had refused to dress himself in the clothes provided, Sergeant Freeman "grabbed" him and threw him out of the cell and bent his arm; that Deputy Miller also bent his arm; that Deputy Fields grabbed him; that someone pushed him; that Sergeant Freeman put a knee into the center of his back; and that Deputy Miller pushed his face near the urine drain. None of these claims are sufficient to constitute excessive or brutal force, and

plaintiff has provided no evidence that he was in fact injured or that he sought medical treatment for any injuries resulting from this incident.

Moreover, the court notes that plaintiff's description of this incident is immediately followed by a description of a seemingly calm discussion between plaintiff and Sergeant Freeman regarding plaintiff's intention to file assault charges against Freeman; and a recounting of an encounter between himself and Senior Deputy Martindale, in which plaintiff complained about Sergeant Freeman, and Senior Deputy Martindale discussed his own personal work philosophy with plaintiff.

Plaintiff claims in his responses to interrogatories that he suffers from "PTSD, anxieties, depression, and personality disorder," but he provides no evidence showing that these alleged injuries were caused by the conduct of Sergeant Freeman or Deputies Fields and Miller on January 22, 2003. Accordingly, the court finds that summary judgment must be GRANTED as to this remaining excessive force claim.

## CONCLUSION

In accordance with the foregoing, the court GRANTS defendants' motion for reconsideration, and GRANTS defendants' motion for summary judgment. Defendants' motions to strike are DENIED.

**IT IS SO ORDERED.**

Dated: May 13, 2009

_____
PHYLLIS J. HAMILTON
United States District Judge